Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Petitioner,<br><br>vs.<br><br>ALAN PHETSADAKONE,<br><br>   Defendant. | Case No. 2:96-cr-00616-RSL-1<br><br>MOTION AND MEMORANDUM FOR WRIT OF ERROR *CORAM NOBIS*<br><br>**Note on Motion Calendar:**<br>**September 19, 2025**<br><br>**Oral Argument Requested** |

## I. REQUEST FOR RELIEF

Alan Phetsadakone ("Alan"), represented by Jennifer Pasquarella, the Seattle Clemency Project, and pro bono counsel Mohammad "Mo" Ali Hamoudi, moves for a writ of error coram nobis. Shortly after turning 18 and providing substantial cooperation to the government, Mr. Phetsadakone pleaded guilty to two counts of bank fraud under 18 U.S.C. § 1344 based on his counsel's belief that his deportation that his conviction would not automatically result in deportation. This error has caused him to face deportation to Vietnam. Because his plea violated his Sixth Amendment right to effective counsel, the Court may grant relief under the All Writs Act, 28 U.S.C. § 1651(a). Mr. Phetsadakone seeks to vacate his conviction and withdraw his plea, supported by declarations, exhibits, and a memorandum of law.

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 1

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

## II.     FACTS AND PROCEDURAL HISTORY

Alan was born on November 27, 1977, and arrived in the United States with his parents, two brothers, and a sister (who was born in Thailand) between 1980 and 1982.[1] His eldest brother and younger sister are still in the U.S.; his father has passed away, while his mother, now approximately 70 years old, resides in Federal Way.[2] He fled war through Thailand before coming to the U.S., and both his grandfather and father assisted the U.S. during the conflict.[3] Alan has no family remaining in Laos, does not know anyone there with his last name, and believes only one other person from Laos is present in the area.[4]

Alan resides in Seattle with his wife, Cheryl, a U.S. citizen whom he married in 1999, and their four children, all U.S. citizens aged 30, 23, 19, and 13, with three currently living at home.[5] He holds a high school diploma and has worked full-time for eight years in the pantry department at Garagiste, a wine importer; his role is flexible, allowing him to work from home and adjust his schedule based on workload, primarily importing pantry goods such as tomato sauce and spaghetti sourced from small vineyards and local farms for direct-to-consumer sales.[6] Alan also has a second job at West Coast Textiles, manufacturing and producing pillows, which is likewise being held for him.[7] But like most people, Alan made mistakes when he was a young man.

In 1996, just months after Alan turned 18, he made a mistake.[8] He became involved with a group of older individuals and assisted them in committing bank fraud by depositing counterfeit

---

[1] Declaration of Chittakone "Alan" Phetsadakone.
[2] Id.
[3] Id.
[4] Id.
[5] Id.
[6] Id.
[7] Id.
[8] See **Exhibits B, C and D** to the Declaration of Jennie Pasquarella (hereinafter "Pasquarella Declaration"): Plea Agreement, Judgment, and US Sentencing Memorandum, respectively.

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 2

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington  98119
T: 206.448.1777

and stolen checks, then further aided them by withdrawing the illicitly obtained funds for approximately $95,000.00.[9]

More specifically, in February 1996 after he was caught, Alan admitted his role in the bank fraud scheme to the FBI and provided information about other participants.[10] He quickly retained counsel, entered plea negotiations, and, after his arrest in October 1996, agreed to plead guilty to all charges in both Oregon and Wisconsin, accepting responsibility for his role.[11] Alan cooperated fully with federal investigators, including traveling to Milwaukee to testify against a co-conspirator, which directly contributed to a guilty plea.[12] He also provided valuable information to assist in prosecuting the scheme's ringleader and has met with agents multiple times, aiding in at least one conviction.[13] His continued cooperation was also important for ongoing prosecutions that continued afterwards.[14] Due to his youth, limited role in the offense, and substantial cooperation with authorities, Alan was sentenced to time served—approximately eight months.[15]

After completing his sentence, Alan rebuilt his life and became a positive contributor to his community.[16] However, despite his rehabilitation, the government has initiated removal proceedings against him.[17]

Alan turned to the Seattle Clemency Project for guidance regarding his rights.[18] Had Alan known the true consequences of his plea, he would not have pled guilty to fraud.[19] Undersigned

---

[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] Id.
[14] Id.
[15] Id.
[16] See **Exhibit G** to Pasquarella Declaration: Support Declarations.
[17] Declaration of Jennie Pasquarella.
[18] Declaration of Jennie Pasquarella.
[19] Declaration of Chittakone "Alan" Phetsadakone.

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 3

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

counsel then obtained audio recordings from Alan's case, which revealed that his previous attorney likely misadvised him about the immigration consequences of conviction based on representations on that record.[20]

At Alan's bond hearing, his attorney assured the magistrate judge that Alan was not a flight risk despite his immigration status, stating: "true the immigration laws are in flux, there could very well be deportation proceedings, but I don't think it is a foregone conclusion that a conviction automatically results in deportation....what we have here is not a certainty of deportation if there is a conviction...that would give my client a motive to flee."[21]

Alan's attorney gave him incorrect advice because, by the time Alan pled guilty on March 27, 1997, Congress had already amended § 1101(a)(43)(M)(i), reducing the loss threshold for aggravated felonies from $200,000 to $10,000. Alan's attorney should never have provided such advice. Instead, counsel should have collaborated with the United States Attorney's Office to negotiate a plea agreement that would have definitively avoided deportation, seeking guidance from an immigration attorney to ensure the resolution protected Alan's immigration status. Had he sought this advice and given it to Alan, Alan would have never pled guilty.[22]

Alan has been a vital presence in his community, consistently offering support and making meaningful contributions. Members of the community have made clear that his removal would be deeply felt and would cause significant hardship.[23]

1. **Angela de Ita**

---

[20] See **Exhibit F** to Pasquarella Declaration: Audio File.
[21] Id.
[22] Declaration of Chittakone "Alan" Phetsadakone
[23] See **Exhibit G** to Pasquarella Declaration.

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 4

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington  98119
T: 206.448.1777

Angela has known Alan for five years through their children's school. She describes Alan as sweet, thoughtful, and always willing to help at school and community events. Angela observes Alan teaching his children to be considerate and grateful, modeling positive behavior. She emphasizes that Alan is a safe, supportive presence in the West Seattle community and that his deportation would devastate his family and community, as he is deeply rooted and regarded as a role model.

2. **Brittiany Demi**

Brittiany, a colleague of Alan's for about a year, attests to his kindness and dedication to his employees. She notes Alan's significant personal growth since his teenage years, his acceptance of responsibility, and his positive changes. Brittiany believes Alan's continued punishment for a mistake at age 17 would be unfair, and she stresses the harm his deportation would cause to his family and community, given his strong ties and the support he provides.

3. **Charisma Eugenio**

Charisma has known Alan for 27 years and describes him as supportive, caring, and always willing to help friends and family. She highlights Alan's transformation from youthful mistakes to becoming a responsible, dedicated father who works hard for his family. Charisma underscores the hardship Alan's deportation would cause, noting his lack of ties to Laos and the vital role he plays in his family and extended community.

4. **Denise Felipe**

Denise, Alan's cousin-in-law and goddaughter, has known him for over 25 years. She describes Alan as a kind, supportive godfather with a strong work ethic who has grown and learned from past mistakes. Denise emphasizes the emotional and financial harm his deportation would

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 5

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

inflict on his family, especially as his children approach important life milestones, and notes his positive transformation and community involvement.

### 5. Edward Kelley

Edward, Alan's future brother-in-law, has known him for four years. He describes Alan as welcoming, dedicated to his family, hardworking, and responsible. Edward notes Alan's growth and maturity, and the devastating impact his deportation would have on his family and community. He highlights Alan's lack of connection to Laos and his role as a pillar of support for many.

### 6. Finn Palmer

Finn, a professional colleague for one year, found Alan to be a responsible leader who fostered community among immigrant employees. Finn notes Alan's efforts to support his daughter and create an inclusive workplace. He expresses concern for Alan's daughter if Alan were deported and supports second chances for those who have reformed.

### 7. Irene Ward

Irene has known Alan since June 2024 and describes him as supportive, gentle, and caring toward his department. She notes the challenges Alan would face if deported, given his family's reliance on him and the difficulty of adjusting to a new culture. Irene believes in the possibility of personal growth and second chances.

### 8. Jackie Lee

Jackie, who has known Alan for about a year at West Coast Textiles, describes him as a responsible, empathetic leader who advocates for his employees and fosters unity. Jackie highlights Alan's deep roots in the U.S., his vital role at work, and the hardship he would face adapting to Laos. Alan's leadership in organizing community events is also noted.

### 9. Janay Destello

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 6

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

Janay, though not personally acquainted with Alan, knows his daughter and wife through school. She attests to the positive reflection of Alan's parenting in his daughter's character and notes the absence of any negative community reports about Alan. Janay emphasizes the emotional and financial hardship Alan's deportation would cause, especially given his wife's upcoming surgery.

10. **Jeff Alden**

Jeff has known Alan since the early 2000s as a coworker and direct report. He describes Alan as an exceptional leader, highly regarded by his team, and a positive influence. Jeff supports second chances for youthful mistakes and stresses the extreme hardship Alan's deportation would cause his family and workplace, given Alan's lack of ties to Laos.

11. **Joel Phillips**

Joel, Alan's supervisor for seven years, describes him as hardworking, transparent, and open to feedback. Joel values Alan's honesty and willingness to help beyond his role. He believes Alan's deportation would cause significant harm to Alan and his family, and notes Alan's integral role in the workplace.

12. **Kevin Stamm**

Kevin has known Alan for just over a year and considers him a great friend and confidante. He supports second chances for youthful mistakes and notes Alan's deep roots in the U.S., his mother's dependence on him, and the harm deportation would cause to Alan's family and community.

13. **Marcie Sheppard Shaw**

Marcie has known Alan for over ten years through his involvement in his children's education and community. She describes him as a positive role model, reliable partner, and

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 7

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

supportive friend. Marcie highlights Alan's transformation from youthful mistakes to a devoted father and community volunteer, and the severe hardship his deportation would cause.

14. **Marneil Bacelonia**

Marneil, a cousin of Alan's wife, has known Alan for nearly twenty years. He describes Alan as hardworking, supportive, and a positive influence on younger family members. Marneil emphasizes Alan's transformation and the injustice of punishing him for past mistakes, noting the harm deportation would cause his family.

15. **Minnie Hidalgo**

Minnie, Alan's sister, has known him all her life. She describes Alan as overprotective, supportive, and responsible, noting his growth from teenage mistakes to a hardworking father. Minnie stresses the hardship Alan's deportation would cause, given his deep community roots and the fact that he fled Laos as a child refugee.

16. **Nehd Montalbo**

Nehd has known Alan for 25 years and describes him as reliable, supportive, and a positive parental role model. Nehd trusts Alan with his own children and highlights the hardship Alan's deportation would cause his family, as well as Alan's positive community contributions.

17. **Nina Ayuson**

Nina has known Alan for 19 years and describes him as a good person, devoted father, and loving husband. She notes Alan's growth since his teenage years and the severe emotional, psychological, and financial harm his deportation would cause his family. Nina emphasizes Alan's transformation and the importance of family unity.

18. **Nina Josef**

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 8

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

Nina has known Alan her entire life, considering him an older brother figure. She describes him as kind, attentive, and supportive at family gatherings. Nina highlights the devastating impact Alan's deportation would have on his wife, children, and extended family, noting his strong ties and positive influence.

19. **Nolen Montalbo**

Nolen has known Alan since 1999 and describes him as loyal, trustworthy, and helpful. He recounts Alan's support during family transitions and his responsible, family-oriented nature. Nolen emphasizes Alan's growth, loyalty, and the harm deportation would cause his family and himself, given his lack of ties to Laos.

20. **Sarah Francis**

Sarah, Alan's neighbor for 19 years, describes him as reliable, generous, and a caring neighbor who strengthens the community. She notes Alan's responsible, hardworking nature and the unfairness of punishing him again for past mistakes. Sarah emphasizes the hardship his deportation would cause his family and the community.

21. **Shannon Crowley**

Shannon, an elementary school teacher, knows Alan through his children and wife. She describes Alan as a positive parental influence, with his children's achievements reflecting his values. Shannon highlights Alan's transformation, the trauma his deportation would cause his family, and his lack of ties to Laos.

22. **Tim Alden**

Tim, a coworker for two years, describes Alan as a good father, great contributor, and effective leader at work. Tim believes Alan's deportation would harm his family and workplace, and he values Alan's presence and leadership

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 9

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

These declarations collectively demonstrate Alan's strong character, personal growth, commitment to family and community, and the significant hardship his removal would cause to those who depend on him.

Given the above facts, this writ follows:

### III. ARGUMENT

**A. *A writ of coram nobis is the only available remedy to relieve Alan from the consequences of his unlawful conviction.***

Alan has completed his sentence and supervised release, so he is no longer "in custody" and cannot seek habeas relief under 28 U.S.C. § 2255. His sole remedy is a writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). The Ninth Circuit holds that coram nobis is appropriate for those suffering "*the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors.*" *United States v. Kwan*, 407 F.3d 1005, 1009-10 (9th Cir. 2005), abrogated on other grounds by *Padilla v. Kentucky*, 559 U.S. 356 (2010) (quoting *Estate of McKinney By and Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995)).

Coram nobis is a common law action presented to the sentencing judge and does not require a separate civil proceeding. *United States v. Morgan*, 346 U.S. 502, 505 & n.4 (1954). There are no strict time limits for filing, as the writ is not subject to the procedural constraints of AEDPA. *Kwan*, 407 F.3d at 1011. To obtain coram nobis relief, Alan must show:

- no other remedy is available,
- good reasons for not attacking the conviction earlier,
- continued consequences create a case or controversy under Article III,

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 10

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

- and "*the error is of the most fundamental character.*" Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987).

Alan meets these requirements due to the ongoing collateral consequences of his conviction since there is no other remedy available, he did not find out until recently that his lawyer was ineffective, the continued consequences of that bad advice create current case and controversy, and the error of that bad advice is of the most fundamental character because it now means he will be exiled from his home and community in the United States.

**B. Alan is entitled to retroactive post-conviction relief because he relied on his attorney's inaccurate advice that a guilty plea would not affect his legal status or citizenship eligibility.**

In *Kwan*, the Ninth Circuit granted coram nobis relief to a non-citizen who pled guilty after his lawyer "*assured Kwan that although there was technically a possibility of deportation, 'it was not a serious possibility'.*" 407 F.3d at 1008. After the plea, Congress passed IIRIRA, redefining "aggravated felony" and resulting in Kwan's deportation. The Ninth Circuit found the collateral consequence of deportation sufficient for coram nobis jurisdiction. 407 F.3d at 1013.

At the time, most courts considered immigration consequences "collateral," not "direct," and did not require defense counsel to advise on them under the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984). However, the Ninth Circuit held that fundamental error occurs when counsel gives inaccurate advice about immigration consequences. Once Alan's attorney responded to his questions, he was required to provide accurate advice. 407 F.3d at 1015-17.

In 2010, the Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, recognized deportation as "*a particularly severe penalty*" and held that defense counsel "*must inform her client whether*

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 11

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

*his plea carries a risk of deportation.*" *Padilla*, 559 U.S. at 365, 374. Although *Padilla* is not retroactive to pre-2010 cases (*Chaidez v. United States*, 568 U.S. 342 (2013)), and abrogated the direct/collateral distinction in *Kwan*, the Ninth Circuit has confirmed that relief for misadvice on immigration consequences survives *Padilla*. *United States v. Chan*, 792 F.3d 1151, 1158 (9th Cir. 2015).

The Supreme Court continues to recognize that a client's right to remain in the U.S. may be more important than any jail sentence, and that deportation is often the most significant factor for noncitizens considering a plea. *Lee v. United States*, 137 S. Ct. 1958, 1968 (2017) (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001); *Padilla*, 559 U.S. at 364, 368).

### C. Alan's case meets the circumstances necessary to grant the writ

Alan pled guilty in 1997 based on ineffective assistance of counsel that deportation was not a certainty. In fact, by the time of his plea, Congress had already amended the law to make his offense an aggravated felony, rendering him deportable. See *U.S. v. Gajendragadkar*, 1998 WL 352866, *2 (4th Cir. 1998) (unpublished). His attorney's advice was objectively incorrect and prejudicial. The Ninth Circuit has held that when counsel gives inaccurate advice about immigration consequences, it constitutes fundamental error warranting coram nobis relief. *Kwan*, 407 F.3d at 1015-17.

The Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, recognized deportation as "a particularly severe penalty" and held that defense counsel "must inform her client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 365, 374. Although *Padilla* is not retroactive to pre-2010 cases (*Chaidez v. United States*, 568 U.S. 342 (2013)), the Ninth Circuit has confirmed that relief for misadvice on immigration consequences survives *Padilla*. *United States v. Chan*, 792 F.3d 1151, 1158 (9th Cir. 2015).

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 12

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

Alan has lived in the United States since early childhood, fleeing war and arriving as a refugee. He has no family or support in Laos, and his entire life—family, work, and community—is in the U.S. After serving his sentence, Alan rebuilt his life, became a devoted husband and father, and is a vital presence in his community. He has consistently worked, supported his family, and contributed positively to those around him.

Declarations from over twenty community members—including family, colleagues, neighbors, and educators—attest to Alan's transformation, strong character, and the devastating impact his removal would have. Angela de Ita describes Alan as "sweet and thoughtful," always helping at school and community events, and emphasizes that his deportation would "devastate his family and community." Brittiany Demi notes Alan's "significant personal growth" and the unfairness of continued punishment for a youthful mistake

Charisma Eugenio highlights Alan's "responsible, dedicated" role as a father and the "immense hardship" deportation would cause. Similar support is echoed by Denise Felipe, Edward Kelley, and many others, all underscoring Alan's deep roots, positive influence, and the severe hardship his removal would inflict.

Alan's conviction was tainted by fundamental legal error. He has demonstrated rehabilitation, responsibility, and a commitment to his family and community. Deporting Alan would not serve justice; it would inflict disproportionate harm on an individual who has paid his debt, reformed, and become a pillar of his community. The writ of coram nobis is designed precisely for such cases—where a grave injustice persists due to errors of fact or law, and no other remedy exists.

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 13

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777

Dated this 29th day of August, 2025.

Respectfully submitted,

*s/ Jennifer Pasquarella*
JENNIFER PASQUARELLA, WSBA#62205
Seattle Clemency Project
20415 72nd Ave S
Kent, Washington 98032
Phone: (917) 690-2038
Email: jennie@seattleclemencyproject.org

*s/ Mo Hamoudi*
MOHAMMAD "MO" ALI HAMOUDI,
    WSBA#48512
Stritmatter Law
3600 15tth Avenue West, Ste 300
Seattle, WA 98119
Phone: (206) 448-1777
Email: mo@stritmatter.com

Counsel for Defendant Phetsadakone

MOTION AND MEMORANDUM FOR WRIT OF ERROR
*CORAM NOBIS* - 14

STRITMATTER LAW
3600 15th Avenue West, #300
Seattle, Washington 98119
T: 206.448.1777